# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-3924

_____

United States of America,

        Appellee,

v.

Mario Delgado-Paz, also known as
Wetto, also known as Fernando Ramos-
Quiles,

        Appellant.

\*
\*
\*
\*
\*  Appeal from the United States
\*  District Court for the
\*  District of Nebraska.
\*
\*
\*
\*
\*

_____

Submitted: May 14, 2007
Filed: November 5, 2007

_____

Before MURPHY, HANSEN, and COLLOTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Mario Delgado-Paz pled guilty to a charge of conspiracy to possess with the intent to distribute fifty grams or more of methamphetamine. In determining the advisory sentencing guidelines range, the district court applied a two-level specific offense characteristic under USSG § 2D1.1(b)(1), for possession of a dangerous weapon. The court also denied Delgado-Paz's request for so-called "safety-valve" relief under 18 U.S.C. § 3553(f) and USSG § 5C1.2, which would permit a sentence below the statutory minimum term of 120 months' imprisonment, on the ground that he possessed a dangerous weapon in connection with the offense. We conclude that

the district court's application of § 2D1.1(b)(1) and denial of safety-valve relief cannot be upheld on the limited findings included in the record. Accordingly, we vacate the sentence and remand for additional findings of fact and resentencing.

I.

According to evidence presented by the prosecution, Alfredo Castaneda was an informant who made controlled purchases of methamphetamine under the direction of law enforcement. On June 22, 2006, at the behest of police, he contacted Ruben Olivares and asked to purchase twenty-eight grams of methamphetamine and a firearm. Olivares told Castaneda to meet him at a specified location, where Delgado-Paz and Olivares picked him up in a vehicle. Delgado-Paz, who was driving, dropped off Castaneda and Olivares at Olivares's house. Then, at Olivares's direction, Delgado-Paz took the vehicle to pick up the "stuff" from another location.

Delgado-Paz returned to Olivares's home roughly twenty to thirty minutes later, carrying a paper bag containing methamphetamine and marijuana. Castaneda testified that Delgado-Paz was carrying a handgun in his back pocket. Delgado-Paz gave the bag to Olivares, who removed the drugs and gave them to Castaneda. According to Castaneda, Delgado-Paz then removed the gun from his pocket and placed it on a table. After further discussion, Castaneda paid Olivares $800 for the drugs and another $800 for the gun, and Olivares gave the firearm to Castaneda. Olivares and Delgado-Paz then transported Castaneda back to the location where they had picked him up. Castaneda contacted the police and gave them the drugs and the handgun he had purchased.

Delgado-Paz pled guilty to conspiracy to possess with intent to distribute fifty grams or more of methamphetamine, an offense that carries a statutory minimum sentence of ten years' imprisonment. 21 U.S.C. §§ 841(b)(1)(A)(viii). At the sentencing hearing, Delgado-Paz acknowledged through counsel that he was involved

in the transaction and that a firearm was present, but contended that the evidence did not establish that he knowingly possessed the weapon. Delgado-Paz relied on a search warrant affidavit, which reported that the firearm was contained in the brown paper bag that Delgado-Paz retrieved for Olivares (and not in Delgado-Paz's pocket), and asserted that Delgado-Paz's possession of a gun (as opposed to the drugs) was unwitting. He also challenged Castaneda's credibility, and disputed Castaneda's testimony that Delgado-Paz carried the firearm in his pocket.

The district court did not resolve this dispute as to whether Delgado-Paz knowingly brought a gun to the transaction. The court found instead that *Olivares* had possessed the gun, and that Delgado-Paz was accountable for Olivares's possession: "There isn't any question that [the gun] was possessed. It was possessed at least by Mr. Olivares. But the defendant is responsible for the conduct of other persons which is part of the conspiracy . . . ." (S. Tr. 54). On this basis, the court applied the two-level specific offense characteristic under § 2D1.1(b)(1). The court also ruled that Olivares's possession of the handgun made Delgado-Paz ineligible for safety-valve relief under 18 U.S.C. § 3553(f) and USSG § 5C1.2.

As a consequence, Delgado-Paz was subject to the statutory minimum of ten years' imprisonment. The court concluded that the advisory sentencing guideline range for Delgado-Paz was 120 to 135 months' imprisonment, and imposed a sentence of 120 months. In considering Delgado-Paz's appeal, we review the district court's interpretation of the advisory sentencing guidelines *de novo*, and its findings of fact for clear error. *United States v. Holthaus*, 486 F.3d 451, 454 (8th Cir. 2007).

II.

A specific offense characteristic applicable to drug trafficking offenses provides for an increase of two offense levels under the advisory guidelines "[i]f a dangerous weapon (including a firearm) was possessed." USSG § 2D1.1(b)(1). The application

notes explain that the adjustment should be applied "if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." USSG § 2D1.1, comment. (n.3). To meet this burden, "the government need only prove a temporal and spatial nexus among the weapon, defendant, and drug-trafficking activity." *United States v. Torres*, 409 F.3d 1000, 1003 (8th Cir. 2005).

Delgado-Paz acknowledges that both he and a firearm were present during a drug transaction that was undertaken as part of the conspiracy to which he pled guilty. He also concedes that his co-conspirator Olivares knowingly possessed the firearm. Delgado-Paz argues, however, that the district court should not have applied § 2D1.1(b)(1), because it did not find that he knew or should have known that Olivares possessed the gun or planned to sell it.

The district court based its ruling on a finding that the firearm was possessed "at least by Mr. Olivares," that it was "involved in the transaction," and that Delgado-Paz was "responsible for the conduct of other persons which is part of the conspiracy." (S. Tr. 54). This is not precisely correct. For purposes of the advisory guidelines, the defendant is responsible under principles of "relevant conduct" for acts of others that were taken in furtherance of jointly undertaken criminal activity, if they were *reasonably foreseeable* by the defendant in connection with that criminal activity. USSG § 1B1.3(a)(1)(B) & comment. (n.2). In *United States v. Lopez*, 384 F.3d 937 (8th Cir. 2004) (per curiam), where one conspirator possessed a firearm at a location apart from the defendant co-conspirator, we held that the specific offense characteristic could be applied only "if the Government shows that the defendant knew or should have known based on specific past experiences with the co-conspirator that the co-conspirator possessed a gun and used it during drug deals." *Id*. at 944. On another occasion, we seemed to approve the use of more general circumstantial evidence to support a finding of reasonable foreseeability. In *United States v. Atkins*, 250 F.3d 1203, 1214 (8th Cir. 2001), the court discerned no clear error in a district court's finding that one drug trafficking conspirator's possession of

a firearm was reasonably foreseeable to another, where the firearm and drug-related documents were seized from a vehicle in which both parties were traveling. Although the firearm was concealed in a compartment in the door on the driver's side and possessed by the driver, we held that the evidence was sufficient to support a finding that the presence of the firearm was reasonably foreseeable to the defendant passenger. In addition to evidence that both parties were in the vehicle and reportedly bound for a meeting with another conspirator, the court relied on evidence of a close association between the defendant and driver for several weeks, including a visit by the defendant to the driver's residence where methamphetamine was manufactured. *Id.*

In this case, the government relies on the testimony of Castaneda to support the district court's ruling. If Castaneda's testimony is believed, there is ample evidence to find not only that Delgado-Paz could reasonably have foreseen that Olivares would possess a firearm in connection with the drug conspiracy, but also that Delgado-Paz knowingly possessed the firearm and transferred it to Olivares before the transaction with Castaneda. But the district court made no finding about Castaneda's credibility, relying instead only on undisputed evidence that the gun was possessed "at least by Mr. Olivares." Nor did the court determine whether Olivares's possession of the firearm was reasonably foreseeable to Delgado-Paz, or cite evidence that might lead us to conclude that the court implicitly made that determination. The blanket conclusion that Delgado-Paz was "responsible for the conduct of other persons which is part of the conspiracy" is overbroad, because it does not include the limitation of reasonable foreseeability imposed by USSG § 1B1.3(a)(1)(B). Accordingly, we conclude that the sentence must be vacated and the case remanded for additional findings by the district court about whether Delgado-Paz knowingly possessed the firearm or, if he did not, whether Olivares's possession of the firearm was reasonably foreseeable to Delgado-Paz.

The district court also ruled that its finding on the specific offense characteristic under § 2D1.1(b)(1) necessarily rendered Delgado-Paz ineligible for a sentence below the statutory minimum in accordance with the safety-valve provisions. A defendant seeking safety-valve relief must show that he did not "possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense." 18 U.S.C. § 3553(f)(2); USSG § 5C1.2(a)(2). Because we remand for further findings with respect to § 2D1.1(b)(1), we necessarily reopen as well the question whether Delgado-Paz is eligible for the safety valve.

We further note, contrary to the government's apparent position, that the specific offense characteristic and the safety-valve provision regarding weapons are not coextensive. While § 2D1.1(b)(1) may be applied based on a co-conspirator's reasonably foreseeable possession of a firearm in furtherance of jointly undertaken criminal activity, the circuits are unanimous in holding that possession of a weapon by a defendant's co-conspirator does not render the defendant ineligible for safety-valve relief unless the government shows that the defendant induced the co-conspirator's possession. *See United States v. Figueroa-Encarnación*, 343 F.3d 23, 34 (1st Cir. 2003); *United States v. Pena-Sarabia*, 297 F.3d 983, 989 (10th Cir. 2002); *United States v. Clavijo*, 165 F.3d 1341, 1343-44 (11th Cir. 1999) (per curiam); *United States v. Wilson*, 114 F.3d 429, 432 (4th Cir. 1997); *In re Sealed Case*, 105 F.3d 1460, 1462 (D.C. Cir. 1997); *United States v. Wilson*, 105 F.3d 219, 222 (5th Cir. 1997) (per curiam); *cf. United States v. Matias*, 465 F.3d 169, 173 (5th Cir. 2006) (observing "significant difference between co-conspirator liability and constructive possession" and holding that the latter disqualified defendant from safety-valve relief). This uniform conclusion is based on the text of § 3553(f)(2), which refers only to whether *the defendant* possessed a dangerous weapon, and an application note to § 5C1.2, which states that the defendant's accountability for possession of a firearm is limited to "his own conduct and conduct that he aided or abetted, counseled, commanded, induced, procured, or willfully caused." USSG § 5C1.2, comment. (n.4). We think the conclusion of these courts is sound. Therefore, in determining whether

Delgado-Paz was ineligible for safety-valve relief based on possession of a firearm, the district court must apply a different analysis than the reasonable foreseeability standard used under USSG § 2D1.1(b)(1) and § 1B1.3(a)(1)(B).

\* \* \*

For the foregoing reasons, we vacate Delgado-Paz's sentence and remand for resentencing.

_____