# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-2486

_____

| | |
|---|---|
| United States of America, | * |
| | * |
| Plaintiff - Appellee, | * |
| | * |
| v. | * |
| | * |
| Jorge Giovani Muniz Ochoa, | * |
| | * |
| Defendant - Appellant. | * |

_____

No. 10-2522

_____

Appeals from the United States
District Court for the
District of Minnesota.

| | |
|---|---|
| United States of America, | * |
| | * |
| Plaintiff - Appellee, | * |
| | * |
| v. | * |
| | * |
| Elvis Montes Trill, | * |
| | * |
| Defendant - Appellant. | * |

_____

Submitted: February 18, 2011
Filed: June 29, 2011

_____

Before LOKEN, MELLOY, and SHEPHERD, Circuit Judges.

_____

LOKEN, Circuit Judge.

Jorge Giovani Muniz Ochoa, Elvis Montes Trill, and nine others were charged with conspiracy to distribute 500 grams or more of methamphetamine and 50 grams or more of actual methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846. Muniz Ochoa pleaded guilty to that charge, a Class A felony. Montes Trill pleaded guilty to conspiring to distribute fifty grams or more of methamphetamine mixture, a Class B felony. A defendant is eligible for safety-valve relief from an applicable mandatory minimum sentence if the district court finds (among other conditions) that "the defendant did not use . . . a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense." 18 U.S.C. § 3553(f)(2); U.S.S.G. § 5C1.2(a)(2). The now-advisory Guidelines authorize a two-level enhancement to a drug-trafficking sentence "[i]f a dangerous weapon (including a firearm) was possessed." U.S.S.G. § 2D1.1(b)(1). In these cases, a Probation Officer prepared separate Presentence Investigation Reports (PSR). Each contained the following recommendations:

> **Specific Offense Characteristics:** Because a dangerous weapon was possessed, a 2-level increase is applied at § 2D1.1(b)(1).
>
> The defendant is not eligible for the safety-valve provision because a firearm was possessed during this offense. § 5C1.2(a)(1). Specifically, the defendant was arrested in a vehicle with a loaded firearm and a large quantity of methamphetamine. Therefore, a 2-level decrease under § 2D1.1(b)(11) is not applicable.

Muniz Ochoa and Montes Trill objected to these recommendations. At sentencing, the district court[1] applied the § 2D1.1(b)(1) two-level enhancement and sentenced each defendant to his mandatory minimum sentence, 120 months for Muniz Ochoa

---

[1]The Honorable Michael J. Davis, Chief Judge of the United States District Court for the District of Minnesota.

and 60 months for Montes Trill. They separately appeal, arguing the district court procedurally erred in imposing the § 2D1.1(b)(1) enhancement. In addition, Muniz Ochoa argues that the court erred in denying him safety-valve relief from the statutory minimum sentence. We consolidated the appeals and now affirm.

## I.

The district court held separate evidentiary sentencing hearings on June 23, 2010. The government's only witness at both hearings was Christian Armentilla Soto, another conspirator who also pleaded guilty and was sentenced later that day. The § 2D1.1(b)(1) firearm enhancements turned on the conduct of Muniz Ochoa and Montes Trill between October 5 and 7, 2009. We will integrate Armentilla Soto's consistent testimony at the two hearings for convenience.

Armentilla Soto testified that he and Muniz Ochoa drove from Washington State to a farm outside Worthington, Minnesota. They met Montes Trill on October 5 and packaged methamphetamine that had already been delivered to the farm for distribution. While at the farm, Muniz Ochoa removed a firearm from a compartment located behind the vehicle's dashboard stereo and showed it to Armentilla Soto. The next morning, Montes Trill drove the trio to Minneapolis, where they stayed that night. When they arrived at the hotel where Armentilla Soto and Montes Trill would stay, Muniz Ochoa (in the passenger seat) pulled out the stereo, handed it to Montes Trill, removed the gun and drugs from the compartment, and placed them in a black suitcase. Inside the hotel room, Muniz Ochoa hid the drugs under a sink. He then unloaded the gun, gave it to Armentilla Soto, instructed him to reload it, and placed the gun under a mattress on one of the beds, with Montes Trill seated on a second bed watching from a few feet away. Muniz Ochoa was then driven to a second hotel where he spent the night with his girlfriend.

Armentilla Soto testified that the next morning (October 7) he removed the drugs from under the sink and the gun from under the mattress, placed them in the suitcase, and went to the car, as Muniz Ochoa had instructed. In the car, Montes Trill removed the stereo, Armentilla Soto put the gun and drugs in the compartment, and Montes Trill replaced the stereo. They then picked up Muniz Ochoa, and Montes Trill drove the trio from Minneapolis to a hotel near Duluth, Minnesota, where Muniz Ochoa had arranged to sell one pound of methamphetamine to an undercover agent. Shortly before arriving at the hotel, Muniz Ochoa, riding in the passenger seat, removed a portion of the drugs from the compartment behind the stereo.

It is undisputed that Muniz Ochoa then entered the hotel alone and was arrested after completing the sale of 213 grams of actual methamphetamine. Montes Trill and Armentilla Soto remained in the car and were arrested in the hotel parking lot. A search of the vehicle uncovered 81 more grams of actual methamphetamine and a handgun with a loaded magazine in a compartment behind the dashboard stereo. In their plea agreements, both Muniz Ochoa and Montes Trill admitted possessing with intent to distribute all the methamphetamine seized on October 7, including the 81 grams found in the compartment. They did not admit possessing the handgun.

At his sentencing hearing, Muniz Ochoa admitted recruiting Armentilla Soto in Washington State to help distribute drugs in Minnesota. Muniz Ochoa testified that Armentilla Soto brought the gun from Washington to Minnesota and that Muniz Ochoa first saw the gun when Armentilla Soto removed it from the car after they arrived in Worthington to meet Montes Trill. According to Muniz Ochoa, Armentilla Soto never said he was bringing the gun from Worthington to Minneapolis or to Duluth, and Muniz Ochoa did not see the gun after the trio left Worthington. At his sentencing hearing, Montes Trill admitted seeing Muniz Ochoa with the gun while in Worthington the night before they left for Minneapolis but testified he did not see it again until he was arrested in Duluth and the car was searched.

-4-

The district court found that undisputed facts established that both defendants possessed the firearm in connection with the drug offense and imposed a two-level enhancement under § 2D1.1(b)(1). Both defendants object to these findings, which we review for clear error. United States v. Denis, 560 F.3d 872, 873 (8th Cir. 2009), cert. denied, 130 S. Ct. 314 (2009). The government has the burden to prove these issues by a preponderance of the evidence. United States v. Harris, 310 F.3d 1105, 1112 (8th Cir. 2002), cert. denied, 538 U.S. 1052 (2003).

**A. Montes Trill.** Montes Trill argues that the government failed to prove that he possessed the firearm or even knew it was present in the vehicle at the time of his arrest. Possession may be actual or constructive. Denis, 560 F.3d at 873. "Constructive possession is established by proof that the defendant had control over the place where the firearm was located, or control, ownership, or dominion over the firearm itself." United States v. Cox, 627 F.3d 1083, 1085 (8th Cir. 2010); United States v. Williams, 10 F.3d 590, 595 (8th Cir. 1993). While Montes Trill admits previously seeing Muniz Ochoa handle the weapon, he argues that he did not have the ability to control the weapon and did not know it would be used to further their drug activity.

Montes Trill was arrested after he knowingly drove Muniz Ochoa from Minneapolis to Duluth to complete a methamphetamine sale. He saw Muniz Ochoa remove the drugs to be sold from a dashboard compartment where a loaded firearm and more methamphetamine were found following their arrest. Montes Trill admitted seeing Muniz Ochoa in possession of the weapon at the farm where they packaged the drugs prior to leaving for Duluth. Thus, he could reasonably anticipate that the firearm would continue to protect their contraband on the trip to Duluth where it would be distributed. These undisputed facts were more than sufficient to support a finding that Montes Trill and his conspirators were in actual and constructive possession of a dangerous weapon in connection with their drug trafficking offense. See United States v. Braggs, 317 F.3d 901, 905 (8th Cir. 2003); United States v.

Atkins, 250 F.3d 1203, 1214 (8th Cir. 2001). The district court did not clearly err in applying the U.S.S.G. § 2D1.1(b)(1) enhancement. Montes Trill conceded in the district court that this enhancement made him ineligible for safety-valve relief.

**B. Muniz Ochoa.** Muniz Ochoa similarly argues that the district court erred in finding he possessed the gun for purposes of U.S.S.G. § 2D1.1(b)(1). He further argues that it was clearly improbable that the gun was connected to the drug sale and, in any event, that the § 2D1.1(b)(1) enhancement does not make him ineligible for safety-valve relief.

The testimony of Armentilla Soto, if believed, clearly established that Muniz Ochoa was in actual *and* constructive possession of a firearm that he used in connection with this drug offense. See U.S.S.G. § 2D1.1. cmt. (n.3) (apply the enhancement "if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense"). But the district court did not expressly credit Armentilla Soto's testimony. Rather, in its post-sentencing Statement of Reasons for Imposing Sentence, the court found:

> In this case, the Defendant admitted that he knew that co-defendant Soto brought a gun with him when the two traveled to Minnesota from Washington for the purpose of engaging in drug activity. Since Soto was not a resident of Minnesota, the Defendant should have known that it was likely that the gun was still with Soto when they drove to Duluth with the drugs. Furthermore, the Defendant has admitted that he possessed the 81.4 grams of actual methamphetamine that was found with the gun in the car console.

This finding was more than sufficient to support imposing the § 2D1.1(b)(1) enhancement. Applying the relevant conduct principles of the Guidelines, the district court properly imposed the enhancement based upon its finding that Muniz Ochoa "should have known that it was likely that the gun was still with Soto when they drove

to Duluth with the drugs." See United States v. Lopez, 384 F.3d 937, 944 (8th Cir. 2004); Atkins, 250 F.3d at 1214.

Relying on our decision in United States v. Delgado-Paz, 506 F.3d 652, 654 (8th Cir. 2007), Muniz Ochoa further argues that the district court erred in denying him safety-valve relief. In Delgado-Paz, the district court imposed the § 2D1.1(b)(1) enhancement based upon undisputed evidence that a firearm was possessed "at least by" a co-conspirator. We reversed and remanded for resentencing because the court did not "determine whether [the co-conspirator's] possession of the firearm was reasonably foreseeable to Delgado-Paz, or cite evidence that might lead us to conclude the court implicitly made that determination." 506 F.3d at 655. In remanding, we reopened the question of safety-valve eligibility and cautioned "that possession of a weapon by a defendant's co-conspirator does not render the defendant ineligible for safety-valve relief unless the government shows that the defendant induced the co-conspirator's possession" because the safety-valve statute, § 3553(f)(2), "refers only to whether *the defendant* possessed a dangerous weapon." Id. at 655-56 (emphasis in original). See generally United States v. Matias, 465 F.3d 169, 172-74 (5th Cir. 2006).

In United States v. Jackson, 552 F.3d 908, 910 (8th Cir. 2009), we joined the great majority of circuits in holding that "constructive possession [of a firearm] is sufficient to preclude a defendant from receiving safety valve relief." We rejected the defendant's reliance on Delgado-Paz, because that case "addressed only whether safety valve relief is precluded based on a co-conspirator's reasonably foreseeable possession." Id. In this case, after hearing testimony and the arguments of counsel, the district court stated: "The Court will adopt the factual statements contained in the presentence investigation report, including those statements dealing with the enhancement for the firearm." The court expressly ruled only on the § 2D1.1(b)(1) issue, finding "that the Government has met its burden and the two-[level] enhancement applies." Muniz Ochoa argues that the court's "should have known"

finding "is not sufficient to support a finding of constructive possession" that is needed to preclude safety-valve relief.

Although Muniz Ochoa as a passenger was not in constructive possession of the vehicle, he had arranged to sell methamphetamine at a Duluth hotel, he admitted possessing the methamphetamine hidden in the dashboard compartment, as the district court expressly noted in its post-hearing Statement of Reasons for Imposing Sentence, and he admitted recruiting Armentilla Soto to accompany him on his drug-trafficking trip to Minnesota. This is overwhelming evidence that Muniz Ochoa was in constructive possession of the loaded firearm found with 81.4 grams of actual methamphetamine in the compartment. See United States v. Payne, 377 F.3d 811, 815 (8th Cir. 2004) (passenger in joint constructive possession of firearm concealed in the car), vacated on other grounds, 543 U.S. 1112 (2005); Braggs, 317 F.3d at 905; Atkins, 250 F.3d at 1214. "The defendant bears the burden of proving by a preponderance of the evidence the requirements for safety valve relief." Jackson, 552 F.3d at 909. Although the district court did not make express credibility findings resolving the conflicting testimony of Armentilla Soto and Muniz Ochoa, it is apparent on this record that Muniz Ochoa failed to prove that he "did not . . . possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense." 18 U.S.C. § 3552(f)(2). Safety-valve relief was properly denied.

The judgments of the district court are affirmed.

_____