# United States Court of Appeals
## For the Eighth Circuit
_____

No. 18-2974
_____

United States of America

*Plaintiff - Appellee*

v.

Kimani I. Sterling

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City
_____

Submitted: June 10, 2019
Filed: November 1, 2019
_____

Before LOKEN, KELLY, and ERICKSON, Circuit Judges.
_____

LOKEN, Circuit Judge.

Kimani I. Sterling pleaded guilty to two counts of cocaine distribution and one count of conspiracy to distribute 28 grams or more of cocaine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B), (b)(1)(C), and 846. At sentencing, over Sterling's timely objections, the district court determined that his base offense level is 26, based on unchallenged drug quantity facts stated in the Presentence Investigation Report ("PSR"). See USSG § 2D1.1(c)(7). The court also imposed a two-level enhancement

for possession of a dangerous weapon. § 2D1.1(b)(1). This resulted in an advisory guidelines sentencing range of 100 to 125 months imprisonment. The court imposed a 125-month sentence, consecutive to Sterling's state sentence for second-degree murder. Sterling appeals the drug quantity and dangerous weapon determinations. Reviewing for clear error, we conclude the government failed to prove estimated drug quantity above base offense level 24 with information that "has sufficient indicia of reliability to support its probable accuracy." USSG § 6A1.3(a). Accordingly, we remand for resentencing.

## I. The Base Offense Level Issue.

Sterling was arrested following a lengthy investigation in which law enforcement officers conducted twenty-one controlled drug buys from Sterling and co-defendants Darryl Smith and Antwanette Howard. The PSR precisely calculated quantities of powdered cocaine and cocaine base involved in each of the controlled buys, and the quantities of drugs and cash seized during a warrant search of Howard's residence on November 15, 2015, the last day of the alleged conspiracy. The PSR recited that, during five of the controlled buys, the undercover detective observed Smith or Howard deliver individually wrapped baggies of cocaine from a larger bag containing multiple individually wrapped baggies.[1] The PSR attributed to Sterling the total amounts sold and seized, making Sterling accountable for 168.355 kilograms of marijuana equivalent, well within the 100 to 400 kilograms required for base offense level 24. See § 2D1.1(c)(8). However, the PSR noted, conspirators Smith and Howard stipulated in their plea agreements to being accountable for the

---

[1]Sterling's Plea Agreement recounted most of the controlled buys and the warrant search seizures. Sterling also admitted: "On several occasions, the [undercover] detective observed Smith in possession of larger quantities of cocaine during the purchases." But the Plea Agreement did not admit that base offense level 26 applies, unlike the plea agreements entered into by Smith and by Howard.

distribution of at least 400 but less than 700 kilograms of marijuana equivalent. Paragraph 49 of the PSR concluded:

> In this case, there were several controlled purchases of cocaine and cocaine base from Sterling and/or his associates. Also, the undercover detective frequently observed Sterling and/or his associates to possess larger quantities of cocaine than those sold to the undercover, and the $4,381 recovered during the search should be converted to drugs. Therefore the Probation Office has held Sterling accountable for the distribution of at least 400 kilograms, but less than 700 kilograms of marijuana equivalent.

Distribution of 400-700 kilograms of marijuana equivalent, more than double the amount actually seized, results in base offense level 26. Sterling did not object to the PSR's detailed description of the controlled buys and evidence seized in the warrant search but did object to paragraph 49:

> Nothing in the [Smith and Howard] plea agreements is directed to the critical issue of what [Sterling] knew or should have known. . . . [T]he only known quantities of drugs come from the undercover sales and search warrant seizure, and those quantities total only into the low end of the offense level 24 range. It is too much of a stretch, and more like a leap too far, to say that proof against [Sterling] more than triples so as to surpass the offense level 24 range and move all the way into level 26 range.

The Probation Officer responded: "because the additional or larger amounts of cocaine and crack cocaine are unknown and unaccounted for, the Probation Office believes it is reasonable that Smith, Howard, and Sterling be held accountable for the distribution of [level 26 quantities] . . . . Ultimately, the Court will determine the applicable base offense level in this case."

At sentencing, the government introduced no further evidence regarding drug quantity. Rather, it called three witnesses who testified that Sterling shot and killed Martez Diaz on September 12, 2015, during the conspiracy period, to show that Sterling's criminal history is under-represented. Though one of the government's witnesses was co-defendant Antwanette Howard, she was not asked about the quantities of drugs distributed by the conspirators or the extent to which quantities distributed by Smith and Howard were reasonably foreseeable to Sterling. At the end of the evidentiary hearing, the district court overruled Sterling's objection to base offense level 26 based on "what was presented in the [PSR]." On appeal, Sterling argues this was a clearly erroneous drug quantity finding.

The government must prove the quantity of drugs for which Sterling is responsible by a preponderance of the evidence. As a participant in a criminal conspiracy, Sterling is responsible for acts of co-defendants Smith and Howard that were within the scope of, in furtherance of, and reasonably foreseeable in connection with the drug distribution conspiracy. USSG § 1B1.3(a)(1)(B). When the amount of narcotics seized by the government does not reflect the scale of the drug trafficking offense, as in this case, "the court shall approximate the quantity of the controlled substance" and may consider, for example, "similar transactions in controlled substances by the defendant." USSG § 2D1.1, comment. (n.5). "The court may make a specific numeric determination of quantity based on imprecise evidence." United States v. Roach, 164 F.3d 403, 413 (8th Cir. 1998), cert. denied, 528 U.S. 845 (1999).

Many defendants have appealed estimated drug quantity findings; few have cleared the high bar of clear error review. That is because, almost invariably, the district court finding was based upon testimony at trial or at an evidentiary sentencing hearing -- usually by suppliers or customers of the defendant -- that provided the court with a reasonable basis to make "a specific numeric determination of quantity based on imprecise evidence." See, e.g., United States v. Madison, 863 F.3d 1001, 1005-06 (8th Cir. 2017) (proffer interview report); United States v. Yellow Horse,

-4-

774 F.3d 493, 496-97 (8th Cir. 2014) (co-conspirator trial testimony); United States v. Walker, 688 F.3d 416, 419 (customers' sentencing hearing testimony); United States v. Bradley, 643 F.3d 1121, 1127-28 (8th Cir. 2011) (co-conspirator trial testimony); United States v. Sicaros-Quintero, 557 F.3d 579, 582 (8th Cir. 2009) (quantities customer reported buying); United States v. Minnis, 489 F.3d 325, 330-32 (8th Cir. 2007), cert. denied, 552 U.S. 1154 (2008); Roach, 164 F.3d at 407, 414 (trial testimony of courier regarding quantities delivered).

Here, the PSR combined with Plea Agreement fact recitals conclusively establish that Sterling is responsible for a base level 24 finding of 168.355 kilograms of marijuana equivalent, which he does not contest. But there is nothing in the record providing a reasonable basis to make "a specific numeric determination of [400 to 700 kilograms] based on imprecise evidence." The PSR made no attempt to quantify the "multiple individually wrapped baggies" the undercover detective observed during five controlled buys, and the detective did not testify. There was no trial evidence for the district court to take into account. The government offered no drug quantity testimony at the sentencing hearing despite presenting testimony on another subject by co-defendant Howard, a person likely able to estimate the quantities of cocaine and cocaine base distributed by the conspirators. On this record, the government is left with its argument that Smith and Howard admitted to a base offense level of 26 in their plea agreements, and "the evidence shows that Sterling could have reasonably foreseen the extent of the conspiracy's drug sales." But a co-conspirator pleading guilty focuses on his or her individual responsibility. The issue here is whether Sterling is responsible for the full drug quantities which Smith and Howard admitted distributing. Without testimony at the sentencing hearing establishing quantity and reasonable foreseeability – testimony readily available from Howard -- the government's argument that their plea agreements establish Sterling's base offense level at level 26 rather than level 24 rests on mere speculation.

In responding to Sterling's objection, the Probation Officer acknowledged "the additional or larger amounts of cocaine and crack cocaine are unknown and unaccounted for," opined "it is reasonable that Smith, Howard, and Sterling be held accountable for" base offense level 26 quantities, and left the issue for the district court to resolve. The Officer's opinion may be justified, but a drug quantity finding requires "specific numeric determination." Without quantity information having "sufficient indicia of reliability to support its probable accuracy," USSG § 6A1.3(a), reliance on the Probation Officer's unsupported opinion results in a clearly erroneous quantity finding. See United States v. Lawrence, 915 F.2d 402, 409 (8th Cir. 1990). As the government failed to provide that information at sentencing, the base offense level 26 finding must be reversed and the case remanded for resentencing. This is not a case where the sentencing record makes clear that the error was harmless. See Molina-Martinez v. United States, 136 S. Ct. 1338, 1346-47 (2016).

## II. The Firearm Enhancement.

Possession of "a dangerous weapon (including a firearm)" is a specific offense characteristic warranting a two-level increase in sentencing for a drug-trafficking offense. USSG § 2D1.1(b)(1). "The enhancement should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." § 2D1.1, comment. (n.11(A)). Under the advisory guidelines' relevant conduct principles, "§ 2D1.1(b)(1) may be applied based on a co-conspirator's reasonably foreseeable possession of a firearm in furtherance of jointly undertaken criminal activity." United States v. Delgado-Paz, 506 F.3d 652, 655 (8th Cir. 2007); see USSG § 1B1.3(a)(1)(B) & comment. (n.2). We review the district court's findings on these issues for clear error. United States v. Muniz Ochoa, 643 F.3d 1153, 1156 (8th Cir. 2011).

The PSR recommended that the district court impose this enhancement based on two firearms found during the warrant search of Howard's residence on November

15, 2015, the last day of the alleged conspiracy. The PSR also noted that Sterling possessed a firearm when he shot and killed Ja'Que Dawkins earlier that day (resulting in his second degree murder conviction), "but there is no information available to conclude the murder was related to the conspiracy to distribute cocaine." Prior to sentencing, Sterling filed a Sentencing Memorandum in support of his objection to this enhancement. At the sentencing hearing, before the government witnesses testified, the district court overruled this objection "for all of the reasons set forth in the [PSR]."

On appeal, Sterling argues the district court clearly erred in imposing this enhancement because there was no evidence that use of a firearm to murder Dawkins was associated with the drug conspiracy, no evidence that firearms were present during the controlled buys, and no evidence that the firearms found in Howard's home were reasonably foreseeable to Sterling. There is ample evidence that Howard and Sterling engaged in jointly undertaken criminal drug trafficking and that Howard was in actual or constructive possession of the two firearms found in her home. And the testimony at the sentencing hearing provided even stronger evidence that Sterling possessed one or more firearms in connection with drug trafficking.

Co-defendant Howard testified that Sterling killed drug dealer Martez Diaz a month before the warrant search, using the "gun that he always has," a .40 caliber handgun "just like her[ ]" gun seized in the search. Mylin Smith, Sterling's cellmate in state custody (no relation to co-defendant Darryl Smith), testified that Sterling told him in April 2018 that Sterling killed Diaz during an argument over a cocaine transaction. Smith also testified that Sterling described his relationship with a man named Darryl: "Sort of like a partner in crime," with Sterling being the "muscle" and Darryl being the "brain." This testimony along with unchallenged facts in the PSR more than satisfy the government's burden to show by a preponderance of the evidence that Sterling "was in actual *and* constructive possession of [one or more]

firearm[s] that he used in connection with this drug offense." <u>Muniz Ochoa</u>, 643 F.3d at 1157.  We affirm the district court's imposition of the § 2D1.1(b)(1) enhancement.

The judgment of the district court is reversed in part and the case is remanded for further sentencing proceedings not inconsistent with this opinion.

_____