# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-3938

_____

United States of America,               *

                               *

           Appellant,         *

                               *   Appeal from the United States

     v.                     *   District Court for the

                               *   Northern District of Iowa.

Noel Vasquez-Rubio, also known  *

as Primo,                     *

                               *

           Appellee.          *

_____

Submitted:  June 12, 2002

Filed:   July 22, 2002 (revised 8/19/02)

_____

Before MORRIS SHEPPARD ARNOLD, HEANEY, and MURPHY, Circuit Judges.

_____

MURPHY, Circuit Judge.

Noel Vasquez-Rubio (Vasquez) pled guilty to the charge of conspiracy to distribute methamphetamine in violation of 21 U.S.C. §§ 841(b)(1)(A), 846, and the parties stipulated in the plea agreement that Vasquez was accountable for over 15 kilograms of methamphetamine. At sentencing the district court found that Vasquez had played an aggravating role in the offense and imposed a two level sentencing enhancement under USSG § 3B1.1(c). United States Sentencing Commission, Guidelines Manual, § 3B1.1 (Nov. 2000). The government appeals, arguing that the court erred in its application of § 3B1.1. We remand for resentencing.

Vasquez came to the attention of law enforcement officers in the course of a drug investigation. In March 2001 agents of a multi-state drug task force arrested two men who had delivered several pounds of methamphetamine to an undercover officer. Before the arrest the agents saw the two meet with a third man who was later identified as Gabriel Aguilar. Several days after the arrest, agents observed Vasquez and a woman identified as Argelia Sandoval-Aguilar (Sandoval) purchase a container of methyl sulfone (MSM), a common dilutant for methamphetamine, from a veterinary supply store.

Vasquez was identified as a drug source in April 2001 by a woman who approached task force agents and reported that her husband, Javier Estrada, was selling methamphetamine and other drugs. She said he obtained drugs from Vasquez, Salvador Rubio-Zavala (Rubio), Raul Dominguez-Garcia (Dominguez), and Antonio Hernandez, and that she helped her husband by driving him to drug transactions and translating for him. Police surveilled four separate drug transactions involving Estrada, then arrested him after he sold methamphetamine to a confidential informant. Search warrants were executed at the homes of the drug sources identified by Estrada's wife. The search of the home of Vasquez and Sandoval revealed an ounce of methamphetamine, packaging materials, and several handguns. The residence of Hernandez and his wife Veronica contained more than eight pounds of methamphetamine and a handgun. Small amounts of methamphetamine and marijuana, along with drug notes and a scale, were found at the home shared by Rubio and Dominguez.

Vasquez, Estrada, Sandoval, Antonio Hernandez, and Veronica Hernandez were all charged in a single count indictment with conspiracy to distribute methamphetamine. 21 U.S.C. §§ 841(b)(1)(A), 846.[1] All five pled guilty.

---

[1] Rubio and Dominguez were originally charged with drug offenses in state court but later indicted by a federal grand jury with conspiracy to distribute

A presentence report (PSR) was prepared for Vasquez. It reflected a stipulation by the parties that his base offense level should be calculated at 38 because he was accountable for more than 15 kilograms of methamphetamine. See § 2D1.1(c)(1). It also reflected joint stipulations that Vasquez receive a two level upward adjustment for the firearm found at his home, see § 2D1.1(b)(1), as well a three level decrease for acceptance of responsibility. See § 3E1.1. The PSR contained a recommendation that Vasquez receive a four level increase for his role as an organizer or leader in a conspiracy involving five or more participants. See USSG § 3B1.1(a). With that enhancement his adjusted offense level would have been 41. Combined with a criminal history category of I, this would have resulted in a guideline range of 324 to 405 months. USSG Ch. 5, pt. A.

Vasquez did not object to any of the facts contained in the PSR, and the only disputed issue at his sentencing concerned his role in the offense. The sentencing guidelines provide for a four level increase in the base offense level if the defendant was "an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive," USSG § 3B1.1(a), and a three level increase if the defendant was a "manager or supervisor" of such a criminal activity. § 3B1.1(b). A two level increase applies if the defendant was an "organizer, leader, manager, or supervisor" in a criminal enterprise with fewer than five participants and not otherwise extensive. § 3B1.1(c).[2] The government requested a four level increase

methamphetamine under 21 U.S.C. §§ 841(b)(1)(A), 846. Gabriel Aguilar was indicted on the latter charge as well.

[2]The relevant guideline reads as follows:

§ 3B1.1. Aggravating Role

Based on the defendant's role in the offense, increase the offense level as follows:

under subsection (a). Vasquez opposed it and argued that the drug business belonged to his brother Leandro and that his own responsibilities were essentially administrative.

Estrada, Sandoval, and Veronica Hernandez testified at the sentencing hearing. This testimony was consistent with the facts contained in the PSR. According to their statements, Vasquez paid Aguilar to transport drugs from California to Iowa on several occasions in the spring of 2001. Aguilar delivered ten pounds of methamphetamine to Vasquez in April 2001, and Sandoval unloaded it in a garage. Vasquez paid $500 to the owners of the garage, and Vasquez and Sandoval took the drugs home. Antonio Hernandez and Rubio then picked the drugs up at Vasquez's residence and delivered them to the Hernandez home. A portion was given to Estrada who was later arrested for selling it to a confidential informant, leading to the arrest of Vasquez and others. Estrada stated that in addition he had frequently purchased methamphetamine supplied by Vasquez from both Antonio and Veronica Hernandez,

---

(a) If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels.

(b) If the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive, increase by 3 levels.

(c) If the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b), increase by 2 levels.

USSG § 3B1.1.

and that Antonio Hernandez, Rubio, and Dominguez guarded drugs for Vasquez. Sandoval testified that she frequently acted as a lookout for Vasquez's drug distribution activities.

The court adopted all of the recommendations contained in the PSR except for the recommendation that Vasquez receive a four level enhancement under USSG § 3B1.1(a) for his role in the offense. Instead, it applied the two level enhancement under § 3B1.1(c). That guideline section is to be used for an "organizer, leader, manager, or supervisor" who does not fit either § 3B1.1(a) or (b), which both apply to a "criminal activity that involved five or more participants or was otherwise extensive." If the criminal activity in which the defendant was involved meets that test, the choice between the two subsections depends on whether the defendant was an organizer or leader, § 3B1.1(a), or a manager or supervisor, § 3B1.1(b).

In explaining its reason for applying § 3B1.1(c), the district court stated that Vasquez had supervised "enough people to qualify for an increase of two levels under 3B1.1(c)." It stated that a two level enhancement would result in an adjusted offense level of 39 and a guideline range of 262 to 327 months, as opposed to a level 41 and a range with a low point 62 months higher if Vasquez were sentenced as an organizer under § 3B1.l(a). The court also stated that:

> I hate to give him another five years for that [§ 3B1.1(c)], but the difference is, between 41 [under § 3B1.1(a)] and 39 in a[n adjusted] offense level is about 64 months at the bottom edge. And we're talking now about 20 years from now let's give him another five because he was an organizer. . . . I think it is all kind of ridiculous. . . .

Vasquez was then sentenced to 262 months, at the low end of the range resulting from the two level enhancement for aggravated role.

Because neither side challenges the court's finding that Vasquez had at least a supervisory role in the criminal enterprise, the only question on appeal is whether the criminal activity involved five or more participants or was otherwise extensive. <u>See</u> <u>United States v. Rostoff</u>, 53 F.3d 398, 413 (1st Cir. 1995). The district court's factual findings, including its determination of a defendant's role in the offense, are reviewed for clear error. <u>United States v. Dijan</u>, 37 F.3d 398, 403 (8th Cir. 1994). Its application of the guidelines to the facts is reviewed de novo. <u>United States v. Wells</u>, 127 F.3d 739, 744 (8th Cir. 1997). The government argues on appeal that the district court erred in failing to assess at least a three level enhancement under § 3B1.1(b).

An enhancement under § 3B1.1 must be supported by a preponderance of the evidence. <u>United States v. Sarabia-Martinez</u>, 276 F.3d 447, 451 (8th Cir. 2002). The evidence related to Vasquez's role in the conspiracy clearly supports the court's finding, unchallenged on appeal, that he was at least a supervisor. The next issue then is whether the admitted facts showed that the criminal activity had at least five participants or was otherwise extensive. A "participant" for the purposes of § 3B1.1 is a person criminally responsible for the commission of the offense. § 3B1.1, comment. (n.1). There was ample unchallenged evidence in the PSR and at sentencing that at least five persons were criminally responsible for the scheme of drug distribution for which Vasquez was convicted. For example, the methamphetamine which led to Vasquez's arrest was handled in turn by Aguilar, Vasquez, Sandoval, Antonio Hernandez, Rubio, Veronica Hernandez, and Estrada. Vasquez contends that the sentencing court might have rejected the higher enhancements because it found there were multiple conspiracies, each with fewer than five members. Although this argument was raised in defendant's sentencing memorandum, the district court made no finding that multiple conspiracies existed. Moreover, because five defendants pled guilty to the same count of conspiracy, the court was bound to conclude that the criminal activity involved at least five participants. <u>Cf.</u> <u>Rostoff</u>, 53 F.3d at 413. Any finding to the contrary would have

been clear error. We conclude that the district court erred in applying § 3B1.1(c) when the evidence did not support it.[3]

There is no question that today's laws provide for very long sentences for individuals like Vasquez who have been involved in major drug trafficking, and the experienced trial judge was candid in stating his frustration with the relevant law. The evidence that Vasquez played an aggravating role is very strong, however, and once the court made such a finding it could not choose to disregard the evidence that there were five or more participants or an otherwise extensive operation. The record supports the district court's finding that Vasquez was at least a supervisor, but it erred as a matter of law in its application of § 3B1.1. We must therefore reverse and remand for resentencing under USSG § 3B1.1(b).

A true copy.

ATTEST:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

[3]We do not therefore need to address whether the criminal activity was otherwise extensive, but the nature and complexity of the operation and its geographical reach are among the factors which would support such a finding in this case. Cf. United States v. Harry, 960 F.2d 51, 54 (8th Cir. 1992).