# United States Court of Appeals
## For the Eighth Circuit

_____

No. 14-3702

_____

United States of America

*Plaintiff - Appellee*

v.

Ismael Aldana Moralez

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: September 25, 2015
Filed: December 10, 2015

_____

Before LOKEN, BEAM, and SHEPHERD, Circuit Judges.

_____

BEAM, Circuit Judge.

A jury convicted Ismael Aldana Moralez of distributing cocaine and other offenses and the district court[1] sentenced him to 210 months' imprisonment. Moralez

_____

[1]The Honorable Greg Kays, Chief Judge, United States District Court for the Western District of Missouri.

challenges the district court's admission of expert testimony and sentencing calculation.  We affirm.

## I.    BACKGROUND

In June 2010, the Kansas City, Missouri Police Department and federal agents began investigating Moralez for narcotics trafficking.  Using controlled buys and telephone surveillance, investigators documented Moralez selling cocaine to lower level dealers. He was arrested and indicted on eleven counts of distributing and one count of conspiring to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1), 846; one count of using a communication facility to facilitate a drug felony in violation of 21 U.S.C. § 843(b)(1) and 18 U.S.C. § 2; one count of improperly entering the country as an alien in violation of 8 U.S.C. § 1325(a); one count of being an illegal alien in possession of ammunition in violation of 18 U.S.C. § 922(g)(5)(A); and two counts of distributing the proceeds of drug sales to Guatemala in violation of 18 U.S.C. §§ 1956(a)(2)(B)(i), 2.[2]

At trial, Special Agent James Taylor testified in both a lay and expert capacity. As a lay witness, Agent Taylor testified about his personal knowledge of the investigation, which he had supervised.  He identified Moralez, testified concerning the surveillance technology that the investigators had used, identified which of the wire-tapped cellular telephones belonged to Moralez, and authenticated evidence. The prosecution then laid foundation for Agent Taylor's expertise in the use of coded language or "drug jargon" by narcotics dealers.  Agent Taylor identified Moralez's voice and translated drug jargon in a series of eight recorded conversations.  For example, Taylor explained that "work" referred to the availability of cocaine and that

---

[2]An additional count related to methamphetamine trafficking was later dropped by the government.

a stated wage such as "$9.50 an hour" signaled a price of $950 for an ounce of cocaine.

The jury found Moralez guilty on all counts except for the proceeds-distribution charges. At sentencing, the district court determined that Moralez had distributed 8.42 kilograms of cocaine, a level 30 offense under United States Sentencing Guidelines § 2D1.1(c)(5), and additionally that he was a manager or supervisor of a conspiracy of five or more people under U.S.S.G. § 3B1.1(b), increasing the offense level to 33. Based on Moralez's criminal history, the suggested Guidelines range was 135 to 168 months. Applying the sentencing factors in 18 U.S.C. § 3553(a), the district court varied upwards to 210 months. On appeal, Moralez objects to the admission of Agent Taylor's expert testimony on drug jargon, the manager-supervisor sentence enhancement, the drug-quantity calculation, and the upward variance from the Guidelines' suggested range.

## II.  DISCUSSION

### A.  Agent Taylor's Expert Testimony

Moralez first argues that because Agent Taylor gave lay testimony about his personal knowledge of the investigation, it was error to admit his expert testimony interpreting drug jargon. We "review[] the district court's decision to admit expert testimony for abuse of discretion, according it substantial deference." United States v. Holmes, 751 F.3d 846, 849 (8th Cir. 2014).[3] An abuse of discretion occurs when

[3]The government argues that counsel for Moralez objected to Agent Taylor's expert testimony for a reason other than the one now raised on appeal, warranting plain-error review. Revels v. Vincenz, 382 F.3d 870, 877 (8th Cir. 2004) ("[W]e review for plain error when admitted evidence was objected to for one reason but appealed for another."). Although the record is ambiguous on this point, we find it unnecessary to resolve this argument because, as explained below, the district court's

"a relevant factor that should have been given significant weight is not considered; when an irrelevant or improper factor is considered and given significant weight; [or] when all proper factors, and no improper ones, are considered, but the court, in weighing those factors, commits a clear error of judgment."  Kern v. TXO Prod. Corp., 738 F.2d 968, 970 (8th Cir. 1984).

Moralez argues that Agent Taylor's dual roles as fact and expert witness prevented effective cross-examination because attempted impeachment of his expert credentials ran the risk of eliciting, and bolstering the credibility of, otherwise inadmissible or disputed fact testimony.  Although we have recognized the propriety of admitting the expert testimony of experienced investigators to assist jurors in understanding drug jargon, e.g., United States v. Delpit, 94 F.3d 1134, 1145 (8th Cir. 1996), we have not directly addressed the risks and necessary precautions attending an investigating agent simultaneously testifying as both a fact witness and an expert.[4]  In United States v. Dukagjini, 326 F.3d 45 (2d Cir. 2003), the Second Circuit noted several risks associated with dual-role testimony:  (1) the witness's aura of credibility as an expert may inflate the credibility of her perception as a fact witness in the eyes of the jury; (2) opposing counsel is limited in cross-examining the witness due to the risk that an unsuccessful attempt to impeach her expertise will collaterally bolster the credibility of her fact testimony; (3) the witness may stray between roles, moving from the application of reliable methodologies into sweeping conclusions, thus violating the strictures of Daubert[5] and Federal Rule of Evidence 702; (4) jurors may

ruling passes muster even under the less deferential abuse-of-discretion standard.

[4]In United States v. Coleman, 284 F.3d 892, 894 (8th Cir. 2002), we held that it was not an abuse of discretion to allow the testimony of an undercover agent interpreting jargon "as both a witness to the statements and as a law-enforcement officer with experience in drug jargon."  We did not, however, grapple with the issue of dual-role testimony so much as recognize alternative bases for foundation.

[5]Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993).

find it difficult to segregate these roles when weighing testimony and assessing the witness's credibility; and (5) because experts may rely on and disclose hearsay for the purpose of explaining the basis of an expert opinion, there is a risk the witness may relay hearsay when switching to fact testimony. Id. at 53-54, 56-59.

Other circuits have identified steps district courts may take to ameliorate these risks. One approach is the use of cautionary instructions to the jury on how to evaluate dual-role testimony. E.g., United States v. Vera, 770 F.3d 1232, 1243 (9th Cir. 2014); United States v. Lopez-Medina, 461 F.3d 724, 745 (6th Cir. 2006). The Seventh Circuit, however, has reasoned that a contemporaneous, dual-role instruction may confuse the jury even more. United States v. Moreland, 703 F.3d 976, 983-84 (7th Cir. 2012). Standard instructions on expert testimony may be sufficient where the testimony makes the basis for the witness's answers apparent. United States v. Dodson, 450 F. App'x 505, 510-11 (6th Cir. 2011). Another approach is to monitor counsel's questioning so that the jury is aware which hat the witness is wearing. E.g., United States v. Jones, 763 F.3d 777, 803-04 (7th Cir. 2014), cert. denied, Young v. United States, 135 S. Ct. 2068 (2015); United States v. Thomas, 74 F.3d 676, 682-83 (6th Cir. 1996), abrogated on other grounds by Morales v. Am. Honda Motor Co., Inc., 151 F.3d 500, 515 & n.4 (6th Cir. 1998). Counsel's questioning can also make a clear transition between roles when laying foundation (e.g., "I'd like to shift gears here a little bit and talk about some of your education, professional training, and law enforcement experience."). United States v. Anchrum, 590 F.3d 795, 804 (9th Cir. 2009). The witness may testify separately in each capacity. United States v. Garcia, 752 F.3d 382, 392 (4th Cir. 2014). The cases imply that the less clear the segregation of roles during testimony, the greater the mitigation required of cautionary instructions. See Lopez-Medina, 461 F.3d at 743-45.

No circuit, it should be noted, has categorically prohibited the use of dual-role testimony by case agents, and failure to take these precautions has only occasionally merited reversal. In Vera, the Ninth Circuit held the failure to instruct the jury on

how to evaluate dual-role testimony in combination with the failure to lay foundation for the evidence was plain error and vacated the jury's drug-quantity findings. 770 F.3d at 1243. In Garcia, the Fourth Circuit vacated a conviction where the testifying agent offered his personal knowledge of the facts surrounding the investigation as a basis for his expertise, did not apply reliable methodologies, and often failed to state any foundation for his interpretations. 752 F.3d at 391-92. The Sixth Circuit vacated a conviction where the testimony was similarly flawed, and the district court did not instruct the jury on either dual-role or expert testimony. Lopez-Medina, 461 F.3d at 748-49.

We agree that district courts and counsel should take appropriate measures to minimize the problems that may arise from dual-role testimony by a case agent. Ideally, the lay and expert testimony would be provided by separate witnesses. When the prosecution needs to make use of the expertise of a case agent providing lay testimony, it might consider bifurcating the questioning. As outlined above, jury instructions and careful questioning are effective tools as well. The difficulty in cross-examining a dual-role witness Moralez objects to should not, of itself, warrant the exclusion of such testimony. The issue for review is whether the questioning and jury instructions sufficiently guarded against the risks identified in Dukagjini. We conclude they did in this case. None of the errors identified in Vera, Garcia, and Lopez-Medina are present here. The prosecution made clear transitions into and out of Agent Taylor's expert testimony and consistently referenced his "experience" when asking about drug jargon.[6] This alerted the jury to the basis for Agent Taylor's answers and demonstrated adherence to a reliable methodology.[7] In addition, the

---

[6]We note that this phrasing, though sufficient in the present case, does run the risk that a jury might interpret "experience" as experience with the case, rather than general experience as a narcotics investigator. See Jones, 763 F.3d at 803.

[7]The methodology underlying the interpretation of drug jargon is "the application of extensive experience to analyze the meaning of the conversations."

district court instructed the jury at the end of trial on how to weigh expert testimony. Affording proper deference to the district court, we conclude it was not an abuse of discretion to admit Agent Taylor's expert testimony.

### B.     Sentencing

#### 1.     Manager-Supervisor Enhancement

Second, Moralez claims that he was neither a manager nor supervisor of the conspiracy but merely a wholesale distributor of cocaine to the coconspirators, and thus the court erred in imposing the three-level enhancement under U.S.S.G. § 3B1.1(b). "The district court's factual findings, including its determination of a defendant's role in the offense, are reviewed for clear error . . . ." United States v. Gaines, 639 F.3d 423, 427-28 (8th Cir. 2011) (quoting United States v. Bolden, 622 F.3d 988, 990 (8th Cir. 2010)). "[W]e construe the terms 'manager' or 'supervisor' broadly under U.S.S.G. § 3B1.1(b) . . . ." Id. at 428 (quoting United States v. Adamson, 608 F.3d 1049, 1056 (8th Cir. 2010)).

The present case is factually similar to Gaines. In Gaines, the defendant purchased large quantities of cocaine, some of which he converted into cocaine base. Id. at 426. Gaines then broke down the larger quantities into smaller amounts and sold the drugs to dealers at prices he set. Id. at 427. He did not, however, exercise any control over the price at which the buyers resold the drugs. Id. On these facts, we found the district court's finding that Gaines was a manager or supervisor under § 3B1.1(b) not clearly erroneous.[8] Id. Acknowledging that the case presented was

---

Fed. R. Evid. 702 advisory committee's note to 2000 amendment.

[8]Gaines found that statements by other panels seeming to require direct control by the defendant over one or more coconspirators for the manager-supervisor enhancement to be applicable narrowed the holding of an earlier panel. Gaines, 639

a close question, we based our conclusion on United States v. Vasquez-Rubio, 296 F.3d 726 (8th Cir. 2002), where we reached the same outcome on similar facts. Gaines, 639 F.3d at 428-29. Looking to the factors listed in the Guidelines, U.S.S.G. § 3B1.1 cmt. 4, we noted the following commonalities between Gaines's conduct and that in Vasquez-Rubio: (1) the defendant's manufacture of the drug; (2) his distribution at a set price for the purpose of redistribution; (3) the nature and broad scope of the illegal activity; and (4) the nature of the defendant's participation in the crime. Gaines, 639 F.3d at 429.

Here, Moralez engaged in nearly the same conduct as in Gaines and Vasquez-Rubio. He broke down large quantities of cocaine into smaller quantities for distribution to dealers. He sold at a set price but controlled neither the frequency nor amount of purchase nor the price upon resale. Moralez did not manufacture cocaine base from the cocaine, but he did "cut," or dilute, it. He distributed the cocaine to at least six others.[9] Like Gaines, Moralez participated in the crime as the primary provider of narcotics for redistribution. Based on these similarities, we find no clear error in the district court's manager-supervisor enhancement.

## 2. Drug-Quantity Calculation

Third, Moralez claims that the calculation of 8.42 kilograms of cocaine was based on unreliable hearsay testimony. "Our review of a district court's drug quantity determination is for clear error, applying the preponderance-of-the-evidence standard . . . ." United States v. Yellow Horse, 774 F.3d 493, 496 (8th Cir. 2014)

F.3d at 428 n.4 (citing United States v. Brown, 311 F.3d 886, 890 (8th Cir. 2002)). "[U]nder the rule that precludes one panel of this court from overruling a prior panel's decision," Gaines concluded direct control, though sufficient, is not necessary. Id.

[9]There were five indicted and one unindicted coconspirators named in the complaint.

(quoting United States v. Rodriguez, 711 F.3d 928, 938 (8th Cir. 2013)). "A district court may rely on hearsay evidence for sentencing purposes, as long as it has 'sufficient indicia of reliability to support its probable accuracy.'" United States v. Hoelzer, 183 F.3d 880, 882 (8th Cir. 1999) (quoting U.S.S.G. § 6A1.3(a)). "[E]vidence of specific drug quantities is not required, as '[t]he court may make a specific numeric determination of quantity based on imprecise evidence so long as the record reflects a basis for the court's decision.'" Yellow Horse, 774 F.3d at 497 (quoting United States v. Roach, 164 F.3d 403, 413-14 (8th Cir. 1998) (citation omitted)).

At the trial, two dealers gave testimony regarding the amount of cocaine they acquired from Moralez. At the sentencing hearing, Agent Taylor gave hearsay testimony on the dealers' estimates given during proffer interviews, and it was these estimates the district court used in its drug-quantity calculation. Moralez argues that the amounts reported in the proffer interviews varied so widely from the amounts described at trial that the hearsay testimony upon which the district court based its calculation did not possess sufficient indicia of reliability to support the probable accuracy of those amounts. Moralez contends the quantity calculation should have been based instead on the trial testimony. But there is ample basis in the record for the district court's calculation. Although Moralez is correct that there are inconsistencies between the proffer interviews and trial testimony, the amounts do not vary so wildly as to render Agent Taylor's hearsay testimony unreliable. The court used the low end of each coconspirator's estimate to determine a total, and those amounts are within the range of estimates provided by both witnesses at trial. Accordingly, we find no clear error in the district court's quantity calculation.

### 3. Reasonableness of the Upward Variance

Finally, Moralez argues the court's upward variance from the Guidelines range was unreasonable. We "consider the substantive reasonableness of the sentence

-9-

imposed under an abuse-of-discretion standard." Gall v. United States, 552 U.S. 38, 51 (2007). "[I]f the sentence is outside the Guidelines range, the court may not apply a presumption of unreasonableness. It may consider the extent of the deviation, but must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." Id. Moralez argues the court erred in failing to consider certain favorable factors he identified in his sentencing memorandum, such as his ailing health and his aged parents, who likely will not survive his sentence. Moralez also points to the fact that he was given a sentence seven and one-half years longer than the coconspirator with the next longest sentence. The upward variance here is an increase of 25% to 56% over the Guidelines range, but the district court noted the "breadth of this criminal enterprise" in making its determination. The transcript of the sentencing hearing demonstrates the district court was aware and took account of the factors listed in 18 U.S.C. § 3553(a). This is all it is required to do. See United States v. Thunder, 553 F.3d 605, 608 (8th Cir. 2009). Moreover, Moralez was the primary distributor in the conspiracy and so it was not substantively unreasonable to impose a greater sentence on him than the other coconspirators. The court gave a reasoned explanation under the § 3553(a) factors and therefore we find it did not abuse its discretion.

## III.  CONCLUSION

Accordingly, for the reasons stated herein, we affirm the district court in all respects.

_____