# United States Court of Appeals
### For the Eighth Circuit

———————————————

No. 16-3844

———————————————

United States of America

*Plaintiff - Appellee*

v.

Malcolm Desean Redmon, also known as Malcolm Deshawn Redmon, also known
as Malcolm Redmond, also known as Harp

*Defendant - Appellant*

——————————

Appeal from United States District Court
for the Western District of Missouri - Jefferson City

——————————

Submitted: April 7, 2017
Filed: July 5, 2017
[Unpublished]

——————————

Before WOLLMAN and LOKEN, Circuit Judges, and NELSON, District Judge.[1]

——————————

PER CURIAM.

———————————

[1]The Honorable Susan Richard Nelson, United States District Judge for the
District of Minnesota, sitting by designation.

Malcolm Desean Redmon pleaded guilty to one count of conspiracy to distribute and possess with intent to distribute 28 grams or more of cocaine base and an unspecified quantity of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B), 846, and 851. The district court[2] sentenced him to 292 months' imprisonment. Redmon appeals, challenging the district court's drug-quantity calculation, its application of obstruction-of-justice and aggravating-role sentencing adjustments, and its alleged failure to take into account the crack/powder cocaine sentencing disparity in its consideration of the 18 U.S.C. § 3553(a) factors. We affirm.

Redmon and twenty-six coconspirators were charged in a superseding indictment with numerous offenses related to a drug-trafficking conspiracy that operated in and around Columbia, Missouri, from approximately November 2011 until November 2014. In his plea agreement, Redmon admitted to the conspiracy charge, but disputed the additional crack and powder cocaine quantities set forth in the agreement. The parties agreed that the district court would determine the ultimate drug quantity and type at sentencing.

Redmon's presentence report (PSR) concluded that he was responsible for 3 kilograms of powder cocaine and 1 kilogram of crack cocaine or 4,171 kilograms of marijuana equivalent, resulting in a base offense level of 32 under § 2D1.1(c)(4) of the U.S. Sentencing Guidelines Manual (U.S.S.G. or Guidelines). The PSR's total drug amount was determined based on admissions and proffer statements of coconspirators; intercepted phone calls and text messages; and surveillance, controlled buys, and a seizure of powder and crack cocaine by law-enforcement officers. The PSR's drug-type determination was estimated based on the ratio of crack and powder cocaine that was seized by law-enforcement officers, purchased in controlled buys, and admitted by coconspirators and confidential informants. The

---

[2]The Honorable Stephen R. Bough, United States District Judge for the Western District of Missouri.

PSR recommended a 4-level adjustment under § 3B1.1(a) of the Guidelines based on Redmon's position as an organizer or leader of the conspiracy and a 2-level adjustment under § 3C1.1 for obstruction of justice. After a 2-level reduction for acceptance of responsibility, Redmon's total offense level was 35, which, coupled with a category VI criminal history, resulted in a Guidelines sentencing range of 292 to 365 months' imprisonment. Redmon objected to the PSR's calculation of drug quantity and type, as well as its recommended application of the aggravating-role and obstruction-of-justice adjustments.

Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) Special Agent Charles Tomlin and Task Force Officer Jonathan Logan testified in support of the PSR's recommendations at the sentencing hearing. They provided summaries of coconspirator admissions and proffers, surveillance records, intercepted calls and texts, and controlled drug buys consistent with the description of the offense conduct set forth in the PSR. They also testified regarding the conduct upon which the aggravating-role and obstruction adjustments were based. After hearing extensive argument, the district court overruled Redmon's objections to the PSR, concluding that the government had demonstrated with reasonable certainty facts sufficient to support the recommendations set forth therein. The court then considered the 18 U.S.C. § 3553(a) sentencing factors, noting in particular Redmon's substantial criminal history and the need to protect the public from further criminal activity by Redmon. The court then imposed a sentence of 292 months' imprisonment.

"We review the district court's application of the Guidelines to the facts de novo; its factual findings for clear error; and the ultimate sentence for reasonableness." United States v. Mannings, 850 F.3d 404, 408 (8th Cir. 2017) (per curiam) (citation omitted).

Redmon first argues that the district court erred in finding that he was responsible for 3 kilograms of powder cocaine and 1 kilogram of crack cocaine, as

set forth in the PSR. "[W]here there is no drug seizure or the amount seized does not reflect the scale of the offense, the court shall approximate the quantity of the controlled substance." United States v. Yellow Horse, 774 F.3d 493, 496 (8th Cir. 2014) (citation omitted). Although the government bears the burden of establishing quantity by a preponderance, it is not required to present "evidence of specific drug quantities" because "'[t]he court may make a specific numeric determination of quantity based on imprecise evidence so long as the record reflects a basis for the court's decision.'" Id. at 497 (citation omitted). The government also bears the burden of establishing drug type by a preponderance, a burden that can be satisfied by circumstantial evidence. See United States v. Whitehead, 487 F.3d 1068, 1071-72 (8th Cir. 2007). In determining drug quantity in the context of a drug-trafficking conspiracy, the district court "may consider all transactions known or reasonably foreseeable to the defendant that were made in furtherance of the conspiracy." Yellow Horse, 774 F.3d at 496 (citation omitted); see also United States v. Lawrence, 854 F.3d 462, 467 (8th Cir. 2017) (noting that the district court may consider amounts from coconspirators' drug transactions in which the defendant was not directly involved, provided that the other transactions "are part of the same course of conduct or scheme" (citation omitted)). The court may rely on hearsay evidence, as long as that evidence has "sufficient indicia of reliability to support its probable accuracy." U.S.S.G. § 6A1.3(a); see United States v. Moralez, 808 F.3d 362, 368 (8th Cir. 2015) (citation omitted).

We review for clear error the district court's determination of drug quantity and type, "applying the preponderance-of-the-evidence standard." Yellow Horse, 774 F.3d at 496 (citation omitted) (quantity); Whitehead, 487 F.3d at 1071 (type). Thus, defendants challenging the district court's determination of drug quantity or type "face an uphill battle on appeal because we will reverse . . . only if the entire record definitely and firmly convinces us that a mistake has been made." United States v. Allen, 440 F.3d 449, 452 (8th Cir. 2006) (citation omitted).

The district court heard testimony from ATF investigators that coconspirator Kenneth Scott, Sr., admitted that he had supplied Redmon with 3 to 4 ounces of cocaine per week over a 33-week period, for a total of 2.7 kilograms of cocaine. In a later proffer statement, Scott, Sr., estimated that he had supplied Redmon with approximately 2 kilograms of cocaine over a 2-year period. Coconspirator Guillermo Ortiz-Perez admitted in a proffer statement that he had sold 2 kilograms of cocaine to Redmon and Ronald Brown for $66,000. Intercepted calls and text messages by Redmon and multiple coconspirators, as well as surveillance and controlled drug purchases, generally corroborated these drug quantities. Although Redmon challenges the veracity of these admissions and proffer statements by coconspirators who were allegedly motivated to lie about Redmon's participation, they were largely corroborated by the investigative evidence. "We afford district courts wide latitude in choosing what information to consider in determining drug quantity, and 'the sentencing court's assessment of the credibility of witnesses is nearly unreviewable.'" Mannings, 850 F.3d at 409 (citation omitted). We conclude that the challenged statements possessed "sufficient indicia of reliability to support [their] probable accuracy" and provided an adequate basis for the district court's 4-kilogram drug-quantity finding. See Moralez, 808 F.3d at 368 (citation omitted).

As for the district court's drug-type determination, the PSR noted that officers executing a search warrant at the residence of coconspirator Teka Hayes seized a total of 149.13 grams of cocaine, 93.63 grams of which was powder cocaine and 55.5 grams of which was crack cocaine. Scott, Sr.'s proffer statement reported that he had observed Redmon convert powder into crack cocaine at Hayes's residence, and officers conducting surveillance observed Redmon and Scott at Hayes's residence. Officers purchased a total of 36.98 grams of cocaine from Redmon in controlled buys, 30.56 grams of which was powder cocaine and 6.42 grams of which was crack cocaine. Thus, considering the 186.11 grams of cocaine recovered by officers over the course of the conspiracy investigation, 124.19 grams, or 67%, was powder cocaine, and 61.92 grams, or 33%, was crack cocaine. Putting aside the quantities of

powder and crack cocaine purchased by others, the district court did not clearly err in finding that of the powder and crack cocaine actually recovered during the conspiracy investigation, 1 kilogram, or 25%, of the 4 kilograms of cocaine attributable to Redmon should reasonably be considered crack cocaine. The proffer statements summarized at sentencing, corroborated as they were by intercepted communications, surveillance, and controlled buys, established a reliable and credible basis upon which the district court could base its finding of drug quantity and type. Accordingly, the district court did not clearly err in finding that Redmon was responsible for 3 kilograms of powder cocaine and 1 kilogram of crack cocaine.

Redmon argues that the district court erred in finding that he was an organizer or leader of the conspiracy and in imposing a 4-level aggravating-role adjustment under § 3B1.1(a) of the Guidelines. He contends that he did not direct the actions of any other individual, that he merely "worked with" others to buy and sell cocaine, and that the evidence supporting the adjustment consisted solely of self-serving statements of cooperating coconspirators. We interpret the terms "organizer" and "leader" broadly for purposes of § 3B1.1. See United States v. Molina-Perez, 595 F.3d 854, 862 (8th Cir. 2010). The government need not show that a defendant was the only leader of a conspiracy or that he led all the other participants. See id. Factors to consider in determining whether a defendant was an organizer or leader include:

> [T]he exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

U.S.S.G. § 3B1.1, cmt. n.4. The district court's determination of a defendant's role in the offense is a factual finding that we review for clear error. See Moralez, 808 F.3d at 367.

The government presented extensive evidence that Redmon directed the activities of multiple coconspirators and other individuals in furtherance of an extensive criminal conspiracy. While incarcerated in Boone County Jail, Redmon successfully directed Marlon Jordan to instruct Courtney Thornton to testify falsely before a federal grand jury regarding her knowledge of the conspiracy. Redmon also told Jordan how to divide a sum of cash, which Thornton was holding for Redmon. Redmon spoke with Thornton following her appearance before the grand jury and demanded details about her testimony, including the names of individuals about whom she was asked. In an intercepted call, Redmon recruited Ryan Wright to distribute cocaine and pressured Wright to "reinvest" his portion of the drug proceeds in the purchase of additional cocaine for distribution. Redmon directed the activities of Vershawn Edwards and Michael Hunt in controlled buys arranged by law-enforcement officers, and he similarly directed the distribution of drugs by Carl Simon. A cooperating source revealed details about Redmon's drug-trafficking activity, noting specifically that although Redmon and Marlon Jordan worked together, Redmon was in charge. The source also identified Ronald Brown and Devon Hopkins as individuals working for Redmon. A confidential informant contacted Redmon to purchase crack cocaine, but Redmon directed Rodney Arnold to complete the transaction. Confidential informants reported that Redmon had fronted 4.5 ounces of cocaine to Corey Coates and that Redmon later pistol-whipped Coates in a public park.

While "[m]erely distributing or selling drugs is not sufficient for the" aggravating-role adjustment, the evidence was sufficient to prove by a preponderance that Redmon's conduct went beyond mere buying and selling. See United States v. Irlmeier, 750 F.3d 759, 763 (8th Cir. 2014) (citation omitted). The government's

evidence displayed "sufficient indicia of reliability to support its probable accuracy." See Moralez, 808 F.3d at 368 (citation omitted). Accordingly, the district court did not clearly err in finding that Redmon played a leadership role in the conspiracy and did not err in determining that Redmon qualified for the § 3B1.1(a) aggravating-role adjustment.

Redmon next challenges the district court's application of the 2-level obstruction-of-justice adjustment set forth in § 3C1.1 of the Guidelines. We review for clear error the district court's factual findings underlying the adjustment, and we review *de novo* the court's construction and application of the Guidelines. See United States v. Mohamed, 757 F.3d 757, 761 (8th Cir. 2014). For the obstruction adjustment to apply, the government must prove by a preponderance "(1) [that] the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the . . . offense of conviction, and (2) [that] the obstructive conduct related to (A) the defendant's offense of conviction and any related conduct; or (B) a closely related offense." U.S.S.G. § 3C1.1. "Threatening, intimidating, or otherwise unlawfully influencing a co-defendant, witness, or juror, directly or indirectly, or attempting to do so," constitutes obstruction. Id. § 3C1.1 cmt. n.4(A).

As recounted above, the government presented evidence of a monitored phone call Redmon placed to Jordan and Thornton, in which he directed Thornton to testify falsely before the federal grand jury regarding her knowledge of the conspiracy. Redmon spoke with Thornton again after her testimony, demanding details about the questions she was asked and the responses she gave. This conduct establishes that Redmon "willfully obstructed or impeded" the investigation and prosecution of the drug-trafficking conspiracy. Id. § 3C1.1; see also United States v. McMannus, 496 F.3d 846, 850 (8th Cir. 2007) (concluding that obstruction adjustment applied when a defendant gave instructions to a coconspirator to conceal her involvement in the

conspiracy), *abrogated on other grounds by* <u>Pepper v. United States</u>, 562 U.S. 476, 491 (2011).

The government presented additional evidence of Redmon's obstructive conduct. While Redmon was incarcerated for the instant offense, officers received information that comments had been posted on a social networking site by an account holder named "Fatz Mizzou" that attempted to identify witnesses in the conspiracy investigation. Concerned for the safety of potential witnesses, officers reviewed recordings of the telephone calls Redmon had made from the Cole County jail and learned that he had spoken with his mother the prior day. In that call, Redmon identified several individuals that he believed to be witnesses in the case and indicated that he would be mailing his mother some paperwork. In another recorded call, Redmon spoke with an individual officers believed to be "Fatz Mizzou" and again identified the individuals that he believed to be witnesses in the case. After the names were posted on Fatz Mizzou's social networking account, various individuals posted comments, which included suggestions that the alleged witnesses should suffer violence. A search of Redmon's jail cell revealed a typewritten summary of information provided by confidential informants, on which were handwritten the names that later appeared on that social networking account. Officers subsequently offered to relocate the identified individuals for their protection. Redmon's conduct clearly constituted an attempt to obstruct justice. See <u>United States v. Vaca</u>, 289 F.3d 1046, 1049 (8th Cir. 2002) (noting that "[a]n attempt to intimidate or threaten a witness, even if unsuccessful, is sufficient to sustain" an adjustment for obstruction of justice (citation omitted)); <u>United States v. Smith</u>, 665 F.3d 951, 955 (8th Cir. 2011) (noting that an attempt requires intent to engage in criminal conduct and a substantial step toward commission of the criminal conduct sufficient to "strongly corroborate[]" criminal intent); <u>see also</u> <u>United States v. Brisbin</u>, 659 F. App'x 903, 906-07 (8th Cir. 2016) (per curiam) (affirming district court's finding that defendant's recorded telephone conversation with his mother about posting his PSR on a social networking site constituted a substantial step toward intimidating government

witnesses and thus attempting to obstruct justice). The district court thus did not clearly err in finding a factual basis for the § 3C1.1 obstruction-of-justice adjustment and in applying that adjustment.[3]

Finally, we conclude without further elaboration that the record belies Redmon's last-ditch contention that the district court failed to recognize its discretion to vary downward from the Guidelines range based on the disparity between crack and powder cocaine sentences.

The judgment is affirmed.

—————————————————

[3]Because this evidence was sufficient to support the district court's application of the aggravating-role adjustment, we need not address Redmon's arguments regarding his rap lyrics and video.