# United States Court of Appeals
### For the Eighth Circuit

_____

No. 19-2574
_____

United States of America

*Plaintiff - Appellee*

v.

Thomas D. Overton

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Southern District of Iowa - Davenport

_____

Submitted: June 19, 2020
Filed: August 19, 2020

_____

Before KELLY, ERICKSON, and STRAS, Circuit Judges.

_____

KELLY, Circuit Judge.

Thomas Overton appeals after a jury convicted him of conspiracy to manufacture, distribute, and possess with intent to distribute 100 grams or more of heroin in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B), and 846. He primarily

challenges the district court's[1] admission of dual-role testimony from an officer who interpreted recorded telephone calls as both a lay and expert witness. We conclude that portions of the challenged testimony were admitted in error. But because the error was harmless, we affirm.

## I. Background

Thomas Overton was indicted based on allegations that he was part of a heroin conspiracy headed by his nephew, Kearnice. The government presented four categories of evidence at trial: (1) Special Agent Jay Bump's testimony about the investigation into Kearnice's drug organization, which spanned several years; (2) a text message and recorded telephone calls between Overton and Kearnice, which Task Force Officer Paul Girskis interpreted for the jury; (3) Task Force Officer Douglas Scott's testimony about his efforts to locate individuals connected to Overton, and testimony from three of them—Nicole Oaks, Lacey Schram, and Frank Barron—that they obtained heroin from Overton; and (4) extensive testimony from Khiemonte Smith, who was described as Kearnice's "right-hand man," about Overton's participation in the drug organization.

Before trial, defense counsel filed a motion *in limine* seeking to exclude portions of Officer Girskis's anticipated testimony. Defense counsel argued that Officer Girskis's interpretations of the text message and recorded telephone calls constituted improper expert testimony. The government argued that it was permissible for Officer Girskis to testify as a lay witness based on his perceptions during the investigation and as an expert witness based on his training and experience. The district court denied the motion. At trial, the government introduced 11 recorded telephone calls and one text message between Overton and Kearnice.

---

[1]The Honorable Rebecca Goodgame Ebinger, United States District Judge for the Southern District of Iowa.

Officer Girskis interpreted these communications for the jury. Defense counsel repeatedly objected to this testimony, but the court overruled each objection.

At the close of evidence, defense counsel requested an instruction informing the jury that the relationship between a mere buyer and seller of drugs does not establish a conspiracy. Khiemonte Smith had testified that, early in the conspiracy, Overton "ran off with the heroin and [Kearnice] was upset." After that, Kearnice told Smith to "bird feed Thomas Overton," meaning "not give him a lot at one time so that he won't run off, so a couple grams here, a gram there . . . therefore he can sell and when he sell it, [Kearnice] don't have to worry. If [Overton] did run off with that, then it really ain't nothing." Defense counsel argued that a buyer-seller instruction was appropriate because Overton used heroin and the organization gave him only small quantities at a time. Defense counsel also argued that Nicole Oaks's and Lacey Schram's testimony that they had purchased heroin from Overton on multiple occasions was insufficient to establish more than a mere buyer-seller relationship because the government did not identify those witnesses until shortly before trial. The district court denied the request for a buyer-seller instruction, concluding that it was not warranted by the evidence.

During closing arguments, defense counsel highlighted that the government had not made controlled purchases of heroin from Overton as it had from other members of the conspiracy, and that the government made last-minute changes to its witness list. In response, the prosecutor told the jury: "If I made mistakes, if [the case agents] made mistakes, then please complain to the DEA and call the U.S. Attorney's Office and tell them that [we] all made mistakes; but do not let a guilty man go free because I made a mistake. That is not what you are here to do." Defense counsel did not contemporaneously object to these remarks. Later on, during a bench conference on another matter, defense counsel requested a mistrial based on the prosecutor's statements. The district court denied the motion, finding that the statements were "imprudent" but not "improper."

The jury found Overton guilty of conspiring to manufacture, distribute, and possess with intent to distribute 100 grams or more of heroin in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B), and 846. Defense counsel subsequently filed a motion for a new trial based on the prosecutor's statements about calling the DEA and the U.S. Attorney's Office. Defense counsel also argued that the prosecutor improperly bolstered the case agents' testimony by summarizing evidence about their backgrounds. The district court denied the motion, again finding that the prosecutor's statements were "imprudent, but not improper." The court further concluded that, even if the statements were improper, they were not prejudicial.

This appeal followed. Overton challenges the denial of his motion *in limine*, the admission of Officer Girskis's testimony, the sufficiency of the evidence, the denial of his request for a buyer-seller instruction, and the denial of his motion for a new trial. He also argues that other statements made by the prosecutor during closing arguments were improper because they stated facts not in evidence and disparaged defense counsel. We address each argument in turn.

## II. The Dual-Role Testimony

The Federal Rules of Evidence generally require witnesses to testify based on personal knowledge. See Fed. R. Evid. 602. They permit only two types of opinion testimony. A lay witness may offer opinion testimony if it is "rationally based on the witness's perception," "helpful to clearly understanding the witness's testimony or to determining a fact in issue," and "not based on scientific, technical, or other specialized knowledge." Fed. R. Evid. 701. And an expert witness may offer opinion testimony if "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue," "the testimony is based on sufficient facts or data," "the testimony is the product of reliable principles and methods," and "the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

Investigating officers are sometimes in a position to provide both forms of permissible opinion testimony. As lay witnesses, they may offer testimony that is rationally based on their perceptions during the investigation. See Fed. R. Evid. 701. And as expert witnesses, they may offer opinion testimony that is based on specialized knowledge gained from training and experience. See Fed. R. Evid. 702. We have not "categorically prohibited" dual-role testimony by case agents when the prosecution needs to make use of the expertise of a case agent providing lay testimony. See United States v. Moralez, 808 F.3d 362, 366 (8th Cir. 2015). However, we have identified "several risks associated with dual-role testimony," including that:

> (1) the witness's aura of credibility as an expert may inflate the credibility of her perception as a fact witness in the eyes of the jury;
>
> (2) opposing counsel is limited in cross-examining the witness due to the risk that an unsuccessful attempt to impeach her expertise will collaterally bolster the credibility of her fact testimony;
>
> (3) the witness may stray between roles, moving from the application of reliable methodologies into sweeping conclusions, thus violating the strictures of Daubert and Federal Rule of Evidence 702;
>
> (4) jurors may find it difficult to segregate these roles when weighing testimony and assessing the witness's credibility; and
>
> (5) because experts may rely on and disclose hearsay for the purpose of explaining the basis of an expert opinion, there is a risk the witness may relay hearsay when switching to fact testimony.

Id. at 365 (citing United States v. Dukagjini, 326 F.3d 45, 53–54, 56–59 (2d Cir. 2003)).

"Ideally, the lay and expert testimony would be provided by separate witnesses." Id. at 366. When this is not possible, "district courts and counsel should take appropriate measures to minimize the problems that may arise from dual-role testimony by a case agent." Id. One measure that is often appropriate is "bifurcating the questioning," but other measures may also be appropriate so long as "the questioning and jury instructions sufficiently guard[] against the risks" associated with dual-role testimony. Id.

## A. The Admission of Officer Girskis's Dual-Role Testimony

It is well-established that the district court "may allow law enforcement officers to testify as experts about drug-related activities unfamiliar to most jurors," including "jargon used in the drug trade." United States v. Lowe, 9 F.3d 43, 47 (8th Cir. 1993) (cleaned up). However, the officer's testimony should not "go beyond the plain meaning of the recorded conversations." United States v. Delpit, 94 F.3d 1134, 1145 (8th Cir. 1996) (cleaned up). The officer's expert testimony may be inadmissible when it pertains to ordinary language and "jurors can make a common sense determination of the evidence without the technical aid of an expert." See United States v. Rodebaugh, 561 F.3d 864, 868 (8th Cir. 2009), vacated on other grounds sub nom. Johnson v. United States, 558 U.S. 1144 (2010). The officer's testimony also may not rely "merely upon the hearsay testimony of non-witness drug dealers." United States v. Avalos, 817 F.3d 597, 601 (8th Cir. 2016) (quoting United States v. Placensia, 352 F.3d 1157, 1165 (8th Cir. 2003)).

We review the district court's ruling on a motion *in limine*, and its admission of expert testimony, for an abuse of discretion. See United States v. Fincher, 538 F.3d 868, 872 (8th Cir. 2008) (motions *in limine*); Avalos, 817 F.3d at 601 (expert testimony). An abuse of discretion occurs when a "relevant factor that should have been given significant weight is not considered; when an irrelevant or improper factor is considered and given significant weight; or when all proper factors, and no

improper ones, are considered, but the court, in weighing those factors, commits a clear error of judgment." Moralez, 808 F.3d at 365 (cleaned up).

In its pretrial motion *in limine*, defense counsel argued that Officer Girskis's anticipated testimony would "exceed the bounds of acceptable expert testimony" because it "goes beyond interpreting code words and instead summarizes Officer Girskis's beliefs regarding the meaning of the conversations based on his knowledge of the case [as a case agent]." Defense counsel asserted that "Officer Girskis should be limited to interpreting individual code words. He should not be allowed to provide an overall conclusion or interpretation of the meaning of conversations." The motion specifically requested "that the Court direct the Government to clearly distinguish between when Officer Girskis is testifying as an expert and when he is testifying as an investigator."

The district court denied the motion, noting that defense counsel had not challenged Officer Girskis's qualifications to testify as an expert and that "the anticipated testimony and the method of the experience-based testimony interpreting these cryptic phone calls is consistent with accepted expert testimony in drug trafficking cases." To the extent the dual-role testimony raised "concerns as to confusion or otherwise," the court stated that it would give an expert-testimony instruction and anticipated that the government would "present the testimony in terms of the lay witness testimony and the expert testimony in a concise and differentiated way so that there's no confusion on the basis for the witness' testimony."

We perceive no abuse of discretion in this pretrial ruling. We have not categorically prohibited dual-role testimony, and when that testimony is presented in a "concise and differentiated way so that there's no confusion," it may be admissible.[2]

---

[2]In its motion, the defense suggested that Officer Girskis's "factual testimony should be segregated from his expert testimony." In denying the motion, the district

The problem is that the testimony at trial was not presented in a concise and differentiated fashion. Portions of Officer Girskis's testimony translated specific pieces of drug code and slang terminology. For example, he testified that "plug" meant "source"; "scratch" meant "money"; "65 ag" meant "$65 a gram"; and "little babies" meant "heroin." A properly qualified expert may testify about this type of coded language to help the jury understand the world of drug trafficking, as the terms may otherwise seem "nonsensical" to them. Avalos, 817 F.3d at 601. As the district court noted, Overton did not object to Girskis's qualifications as an expert in drug trafficking, and his motion *in limine* requested that Girskis's expert testimony be limited to testimony of this type.

Other portions of Officer Girskis's testimony, however, purported to translate non-coded English language and went beyond simply interpreting the words at issue. For instance, Officer Girskis testified that "[t]his is the number that I am at" meant "this is the number I currently have, I will be calling from this number when I need more heroin." He also testified that "[a]bout to get that paper like that" meant "about to get all the paper from the heroin I've sold." And he explained that "[t]his is just goin[g] crazy. It's been a lot and lot, going on" meant "[a] lot of people are getting heroin, he's selling this heroin, people are crazy about it, and lots going on like he's going to need some more." This pattern of partially translating slang terminology, partially translating ordinary English words, and partially providing opinions about

_____

court relied on United States v. Moreland, 703 F.3d 976, 983–84 (7th Cir. 2012), which suggested that it is not necessary to separate this testimony. We note that the Seventh Circuit has since "clarif[ied]" its opinion in Moreland and instructed that "[w]hen a district judge learns that the government intends to put on dual-role testimony from a case agent, it should first encourage the government to present the expert and lay testimony separately. 'Seamlessly switching back-and-forth between expert and fact testimony does little to stem the risks associated with dual-role witnesses.'" United States v. Jett, 908 F.3d 252, 269 (7th Cir. 2018) (quoting United States v. Jones, 763 F.3d 777, 803 (7th Cir. 2014)).

the conversations that went beyond the words themselves, was repeated throughout Officer Girskis's testimony.

This mixed testimony was presented to the jury in an undifferentiated form. To the extent Officer Girskis's opinions were based on his personal perceptions as an investigator on the case, rather than on his expert training and experience, this was never communicated to the jury, and Officer Girskis did not testify about any personal perceptions on which his testimony was based. As a result, there was no way for the jury or counsel—or now, us—to know whether the portions of Officer Girskis's testimony that went beyond the specific code words at issue were based on personal perceptions or whether they were impermissibly based on hearsay statements. See Avalos, 817 F.3d at 601 ("In cases involving coded drug phrases, [Rule 702] requires that the expert base her opinion on personal experience and training and not merely upon hearsay testimony of non-witness drug dealers." (cleaned up)).

The manner in which Officer Girskis's testimony was presented highlights the potential problems with offering this type of dual-role testimony. Testimony about the meaning of drug-code jargon, if based on experience and training, is permissible expert testimony. But Girskis's testimony "about the meaning of conversations in general, beyond the interpretation of code words" is an example of "how an expert on drug code can stray from the scope of his expertise." Dukagjini, 326 F.3d at 55. And the jury was not given the necessary information to distinguish between the lay and expert testimony. See Moralez, 808 F.3d at 366.

We conclude that, while portions of Officer Girskis's testimony constituted admissible expert testimony, other portions did not. Dual-role testimony in a case like this is "not categorically prohibited," but "district courts and counsel should take appropriate measures to minimize the problems that may arise from dual-role testimony by a case agent." Id. In this case, those problems were not sufficiently minimized.

-9-

## B. Harmless Error

We must next consider whether this error was harmless. "An evidentiary error is harmless when, after reviewing the entire record, this court determines that the substantial rights of the defendant were unaffected, and that the error did not influence or had only a slight influence on the verdict." United States v. DeMarce, 564 F.3d 989, 997 (8th Cir. 2009). "Improper admission of evidence which is cumulative of matters shown by admissible evidence is harmless error." Wilson v. City of Des Moines, 442 F.3d 637, 644 (8th Cir. 2006).

We conclude that Officer Girskis's improper testimony did not have more than a slight influence on the jury's verdict. Much of the testimony was cumulative of matters shown by other evidence at trial. The text message and recorded calls were properly admitted, and other witnesses shed light on their meaning. Smith testified that "little baby" and "white boy" meant "heroin"; that "I need you to come through" meant "I need a gram of heroin"; that "plug" meant "source"; and that $65 a gram was a wholesale price for heroin. Officer Scott testified, without objection, that in one of the calls "Overton [was] speaking to his nephew, Kearnice" and "telling Kearnice . . . that he sold the heroin that he had and he can't get in touch with Khiemonte Smith and he needed more."

Smith also provided extensive testimony about Overton's role in the conspiracy. Smith explained that the organization was not selling heroin before Overton came to town and that Overton "had business with more connects and . . . clientele with the heroin"; that Kearnice purchased the heroin and provided it to Smith, who in turn provided it to Overton; that Smith gave Overton a small quantity at a time because he previously "ran off" with some of the heroin; that Smith frequently delivered the heroin to Overton at an apartment complex called Spencer Towers; that Overton was present on at least one occasion when Kearnice was packaging the heroin; and that Overton sold the heroin to others. Lacey Schram

-10-

testified that she purchased heroin from Overton on about three occasions, including once at Spencer Towers. And Nicole Oaks testified that she purchased heroin from Overton "[a] lot of times," often at Spencer Towers.

In light of the text message, recorded telephone calls, properly admitted testimony interpreting these communications, extensive co-conspirator testimony, and testimony from customers, we conclude that the evidentiary error was harmless. See Delpit, 94 F.3d at 1145 (finding that an officer's expert testimony was improper to the extent it went "beyond the plain meaning of the recorded conversations," but affirming because the error was harmless (cleaned up)).

### III.  Sufficiency of the Evidence

Next, Overton argues the evidence was insufficient to prove "either that [he] conspired, or that [he] conspired to distribute at least 100 grams of heroin." "We review the sufficiency of the evidence de novo," viewing the evidence in the light most favorable to the verdict, and reversing "only if no reasonable jury could have found the defendant guilty beyond a reasonable doubt." See United States v. Conway, 754 F.3d 580, 587 (8th Cir. 2014) (cleaned up). We conclude that, based on the evidence described above, a reasonable jury could have found beyond a reasonable doubt "(1) that there was a conspiracy, i.e., an agreement to distribute the drugs; (2) that the defendant knew of the conspiracy; and (3) that the defendant intentionally joined the conspiracy." Id. (cleaned up).

A reasonable jury could also have found that at least 100 grams of heroin was reasonably foreseeable to Overton and within the scope of the conspiracy. See United States v. Jimenez-Villasenor, 270 F.3d 554, 561 (8th Cir. 2001). Smith testified that Overton set up an arrangement for at least 100 grams of heroin. Smith also testified that, to get a price of $65 a gram, it would be necessary to purchase approximately 500 grams to 1,000 grams of heroin. Smith further stated that Overton was present

while heroin was packaged at Kearnice's residence. Officers later found approximately 600 grams of heroin buried in the backyard of that residence. Agent Bump testified that this may be the largest quantity of heroin that has "ever been found at one location in the Quad Cities." This evidence was sufficient to enable a reasonable jury to conclude that at least 100 grams of heroin was within the scope of the conspiracy and that Overton could have reasonably foreseen the extent of the conspiracy. See United States v. Foxx, 544 F.3d 943, 951 (8th Cir. 2008).

## IV. The Buyer-Seller Instruction

Overton also contends the district court erred by denying his request for an instruction that a mere buyer-seller relationship does not establish a conspiracy to distribute drugs. "We review the adequacy of instructions by considering them as a whole, and we grant the district court broad discretion in formulating appropriate jury instructions." United States v. Hester, 140 F.3d 753, 757 (8th Cir. 1998). "A defendant is entitled to an instruction explaining his defense theory if the request is timely, the proffered instruction is supported by the evidence, and the instruction correctly states the law." Id.

We have required a buyer-seller instruction where "there was evidence that the defendant made only a single purchase of cocaine, that he had made no prior agreement to purchase cocaine, and that he did not know the other alleged conspirators prior to that single purchase." See id. (citing United States v. Prieskorn, 658 F.2d 631, 636 (8th Cir. 1981)). By contrast, we have stated that the "instruction is not appropriate when there is evidence of multiple drug transactions, as opposed to a single, isolated sale." Id.

Here, the evidence showed that Overton had a close relationship with the other members of Kearnice's organization and that he obtained heroin from them on several occasions. Witnesses also testified that he distributed heroin to multiple people.

-12-

Although there was testimony that Overton used heroin and only received it in small quantities, the district court did not abuse its discretion by concluding that a buyer-seller instruction was not warranted by the evidence.

## V. The Government's Closing Argument

Finally, Overton argues that a new trial is required because of improper statements made by the prosecutor during closing arguments. Defense counsel did not contemporaneously object to any of the prosecutor's statements at trial, but did file a motion for a new trial based on the prosecutor's statements about calling the DEA or U.S. Attorney's office, as well as the prosecutor's remarks about the case agents' backgrounds. Because there was no contemporaneous objection to these statements at trial, they were reviewable by the district court for plain error. United States v. Amaya, 731 F.3d 761, 764–65 (8th Cir. 2013). We review the district court's determination for an abuse of discretion. Id. at 765.

The district court concluded that the prosecutor's comments about calling the DEA and U.S. Attorney's office were "imprudent, but not improper," and that the remarks about the case agents' backgrounds were not improper because they simply restated uncontested evidence. Further, the district court found that these statements were not prejudicial given the context in which they arose and the government's "strong" evidence at trial. We find no abuse of discretion in this ruling.

Overton additionally argues, for the first time on appeal, that the prosecutor misrepresented the evidence, stated facts not in evidence, and disparaged defense counsel. Because defense counsel "did not object or otherwise bring these issues before the trial court . . . we review for plain error." See United States v. Littrell, 439 F.3d 875, 881 (8th Cir. 2006). Overton must show (1) an error, (2) that is plain, and (3) that affects his substantial rights. United States v. Olano, 507 U.S. 725, 732 (1993). We will exercise our discretion to correct such an error only if it "seriously

affects the fairness, integrity or public reputation of judicial proceedings." Id. (cleaned up).

The statements that allegedly misrepresented evidence and stated facts not in evidence were based on the government's interpretation of the evidence at trial. "It is not improper for the government to comment on its interpretation of the evidence." United States v. Jewell, 614 F.3d 911, 928 (8th Cir. 2010). To the extent the prosecutor's comments improperly "stray[ed] from the evidence and the reasonable inferences that may be drawn from it," see United States v. Robinson, 110 F.3d 1320, 1327 (8th Cir. 1997), we find no error that was so obvious as to seriously undermine the fairness, integrity, or public reputation of judicial proceedings, see Littrell, 439 F.3d at 881–82.

The statements that allegedly disparaged defense counsel arose when the prosecutor argued that defense counsel had tried to show that Overton was a mere user who never distributed drugs, but had "slipped" by admitting that Overton gave Frank Barron heroin as rent for staying at Barron's apartment. It is improper for the government to "encourage the jury to focus on the conduct and role of [the defendant's] attorney rather than on the evidence of [the defendant's] guilt." United States v. Holmes, 413 F.3d 770, 775 (8th Cir. 2005). The prosecutor's statement that defense counsel "slipped" could have improperly suggested to the jury that defense counsel was trying to mislead them but was unable to keep her story straight. However, the prosecutor also highlighted the evidence and reasons supporting his argument that the defense's theory of the case was inconsistent. When viewed in context, these comments do not rise to the level of plain error affecting Overton's substantial rights. See United States v. Melton, 870 F.3d 830, 841 (8th Cir. 2017).

## VI. Conclusion

For the foregoing reasons, the district court's judgment is affirmed.

_____